IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KARLA SOLIS ZUNIGA, §
§
Plaintiff, §
§
VS. § Civil Action No. 3:23-CV-2308-D
§
CITY OF DALLAS, TEXAS, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

Plaintiff Karla Solis Zuniga ("Zuniga") sues her former employer, the City of Dallas, Texas (the "City"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, asserting hostile work environment, sex discrimination, and retaliation claims. The City moves under Fed. R. Civ. P. 12(b)(6) for partial dismissal, seeking to dismiss Zuniga's hostile work environment claim and her sex discrimination and retaliation claims alleging constructive discharge. For the reasons that follow, the court grants the motion and also grants Zuniga leave to replead.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for purposes of deciding the City's motion to dismiss.[1]

---

[1] *Zuniga v. City of Dallas*, 2024 WL 251948, at *1-4 (N.D. Tex. Jan. 23, 2024) (Fitzwater, J.).

After the court granted the City's first motion for partial dismissal and dismissed Zuniga's complaint with leave to replead, Zuniga filed a first amended complaint. After the Equal Employment Opportunity Commission ("EEOC") issued an additional right-to-sue letter to Zuniga in response to a second, related Charge of Discrimination that she filed, Zuniga moved for leave to amend her first amended complaint. The court granted the motion, and Zuniga filed her second amended complaint, adding two new claims stemming from her second Charge of Discrimination. The second amended complaint is Zuniga's operative pleading.

Zuniga's second amended complaint includes only a few factual allegations that were not included in her complaint or her first amended complaint.[2] First, Zuniga clarifies that two of the incidents of harassment she allegedly suffered at the hands of Oladapo Alli ("Alli") happened in the presence of Sergeant Dwight G. Beaty ("Sgt. Beaty"), her supervisor. She also clarifies that Alli—although not her supervisor—outranked her at the Dallas Police Department ("DPD"): he was a "Manager," while she was a "Technician."

Second, Zuniga alleges that neither Sgt. Beaty nor any member of City management ever disciplined Alli or expressed disapproval toward him with respect to most of his harassing actions, nor did they take any other action to prevent or investigate the alleged

---

[2]The court recounts the background facts favorably to Zuniga as the nonmovant. In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

harassment, as they were obligated to do under DPD workplace regulations. Zuniga also asserts that Lieutenant Stephen Bishopp ("Lt. Bishopp"), her Organizational Commander for the months of October and November 2022, failed to take "seriously" the contents of the email she sent him and Sgt. Beaty on November 15, 2022 reporting Alli's conduct and failed to take "immediate and positive steps" to "eliminate" harassing conduct, as required by DPD regulations. Zuniga alleges that the only incident of harassment that City management addressed was the one in which Alli allegedly grabbed her shoulder. A DPD detective interviewed Alli about that incident, although he allegedly did not probe into all of Zuniga's allegations; the DPD issued Alli a criminal citation 90 days after Zuniga initially emailed Lt. Bishopp about the incident.

Third, Zuniga alleges that Alli's conduct was "exacerbated by" management's failure to take her concerns seriously or to take action to stop Alli's conduct, and "began taking a toll on [her] ability to do her job . . . and . . . also impaired how [she] felt, acted and looked in the workplace." 2d Am. Compl. ¶ 32. Zuniga asserts that she began feeling anxious, "sensed she was losing focus," felt embarrassed and humiliated around colleagues who had witnessed Alli's conduct toward her, began dressing in clothing better designed to hide her body, "assiduously avoided eye contact with Alli," and sought out a licensed professional counselor for a session at work. *Id.* ¶ 32(A)-(F). She also alleges that Sgt. Beaty's apparent refusal to speak with her in person after November 30, 2022 "illustrat[es] the palpable degree to which the terms and conditions of [her] job as a Senior GIS Technician had deteriorated." 2d Am. Compl. ¶ 39(B).

Fourth, Zuniga asserts that, after she tendered her resignation from DPD on July 27, 2023, she completed an exit interview.  As part of the exit interview, Zuniga filled out an Employee Exit Interview Form, which both she and the employee conducting the interview signed, and in which Zuniga specified that, "The reason I am leaving is because [DPD's Internal Affairs Division] has still not concluded the sexual harassment/retaliation investigation I filed in November 2022." *Id.* ¶ 70(A)-(D).  According to the second amended complaint, Zuniga's last day of employment (August 8, 2023) was 266 days after her November 15, 2022 email to Lt. Bishopp.

Zuniga asserts four Title VII claims against the City in her second amended complaint: (1) sexually hostile work environment ("Count 1"); (2) retaliation ("Count 2"); (3) sex discrimination, on a constructive discharge theory ("Count 3"); and (4) retaliation, on a constructive discharge theory ("Count 4").  The City now moves for partial dismissal, seeking to dismiss Counts 1, 3, and 4 of the second amended complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The court is deciding the motion on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S.

at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration

omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.* at 678.

## III

The court turns first to Zuniga's hostile work environment claim.

## A

To state a plausible Title VII hostile work environment claim based on conduct of a

non-supervisor, Zuniga must allege factual content that allows the court to draw the

reasonable inference that: (1) she is a member of a protected class; (2) she was subjected to

unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the

harassment affected a term, condition, or privilege of employment; and (5) her employer

knew or should have known of the harassment and failed to take prompt remedial action.  *See EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007) (citations omitted).

As in its first motion to dismiss, the City does not contest that Zuniga has satisfied the first three elements of a hostile work environment claim.  The City contends only that Zuniga has not plausibly pleaded facts satisfying the fourth and fifth elements.  The court considers Zuniga's allegations as to each contested element in turn.

B

The court turns initially to the fourth element of the hostile work environment claim: whether the harassment affected a term, condition, or privilege of employment.

1

Harassment affects a term, condition, or privilege of employment:

> if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration.  This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.   To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted).  The legal standard for workplace harassment is "high," *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003), and "merely offensive"

conduct is not actionable, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[T]he Supreme Court has warned that these high standards are intentionally demanding to ensure that Title VII does not become a general civility code, and when properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Howard v. United Parcel Serv., Inc.*, 447 Fed. Appx. 626, 632 (5th Cir. 2011) (per curiam) (internal citations and quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Ultimately, Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Pub. Accts. of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)).[3]

2

Zuniga alleges that Alli engaged in three incidents of harassment: (1) he interrupted her vacation request by offering to take her on the trip himself and stating that she should

---

[3]The Supreme Court recently held in *Muldrow v. City of St. Louis*, 601 U.S. ___, 144 S. Ct. 967 (2024), that, to make out a Title VII discrimination claim based on transfer to a new role, a plaintiff "must show *some* harm"—not "significant" harm—"respecting an identifiable term or condition of employment." *Id.* at 974. Zuniga contends that *Muldrow* applies to her hostile work environment claim, lowering the level of harassment she needs to show to make out the claim. The court disagrees. The Supreme Court has defined the requirements of a hostile work environment claim over the course of many years, making clear the high bar that plaintiffs must meet to make out this claim. *See, e.g.*, *Harris*, 510 U.S. at 21. There is no suggestion in *Muldrow* that the Supreme Court intended to alter these requirements. This court will therefore continue to apply the standards for a hostile work environment claim that have long been in effect.

have a "Plan B" if her relationship with her boyfriend did not work out, 2d Am. Compl. ¶ 24(C); (2) he squeezed her shoulder and commented that it was "bony," *id.* at ¶ 25(C), (H); and (3) he told her to stop by his office to "see 'Big Daddy' before she left work" and, when she informed Sgt. Beaty that she would report Alli's behavior if it did not stop, threatened to falsely accuse her of calling him a racial slur if she reported him, *id.* at ¶ 26(I), (M). Zuniga's allegations make it clear that Alli's behavior was subjectively offensive to her. She also alleges that Alli's harassment affected her in the workplace, causing her to feel anxious and humiliated around colleagues who had witnessed the incidents, lose focus, begin dressing in clothing designed to hide her body, avoid eye contact with Alli, and seek out a licensed professional counselor at work for a session.

Given the "high" legal standard for workplace harassment, *Gowesky*, 321 F.3d at 509, and the plethora of cases in this circuit indicating that behavior more egregious than Alli's is not actionable, Zuniga's allegations, taken as true, are insufficient to enable the court to draw the reasonable inference that Alli's allegedly harassing conduct affected a term, condition, or privilege of her employment. Zuniga has pleaded one brief incident of unwanted touching and two incidents of sexually suggestive comments. While it is clear that these incidents were subjectively offensive to Zuniga, and the second amended complaint adds allegations indicating that Alli's treatment was humiliating to her and generally "affected how [she] felt, acted and looked in the workplace," 2d Am. Compl. ¶ 77(C), the alleged incidents of harassment are few, isolated in time, and less objectively offensive than other incidents that courts have deemed non-actionable, *see Zuniga*, 2024 WL 251948, at *5-

6 (collecting cases).   The second amended complaint also indicates that, after Zuniga

reported these events, no additional incidents occurred during the remainder of her tenure at

DPD.   Taking "all of the circumstances . . . into consideration," *Hernandez*, 670 F.3d at 651,

the court is unable to draw the reasonable inference that the alleged harassing conduct was

so severe that it "destroyed" Zuniga's opportunity to succeed at DPD, *Shepherd*, 168 F.3d

at 874, such that the City can be held liable for the alleged misconduct.

C

The court now considers the fifth element of the hostile work environment claim:

whether the City knew or should have known of the harassment and failed to take prompt

remedial action.   The City does not challenge Zuniga's allegation that it knew or should have

known of Alli's harassment; it only contests her assertion that it failed to take prompt

remedial action.

1

When an employer, "once informed of allegations of sexual harassment, takes prompt

remedial action to protect the claimant, [it] may avoid Title VII liability."   *Hockman v.*

*Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004) (citing *Nash v. Electrospace*

*Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993) (per curiam)).   "'Prompt remedial action' must be

'reasonably calculated' to end the harassment."   *Id.* (quoting *Skidmore v. Precision Printing*

*& Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)).   Whether the employer has taken

prompt remedial action depends on the facts of the case, and "[n]ot every response by an

employer will be sufficient to discharge its legal duty."   *Skidmore*, 188 F.3d at 615 (quoting

*Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989)); *see also Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). "Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Skidmore*, 188 F.3d at 615-16 (quoting *Waltman*, 875 F.2d at 479). "Employers are not required to impose draconian penalties upon the offending employee in order to satisfy this court's prompt remedial action standard." *Williams-Boldware*, 741 F.3d at 640 (citation omitted).

2

Zuniga has not pleaded facts that enable the court to draw the reasonable inference that the City failed to take prompt remedial action to protect her from Alli's harassment. She alleges that, within ten minutes of her first formal complaint to Sgt. Beaty and Lt. Bishopp on November 15, 2022, Sgt. Beaty told her that he would "address" Alli's behavior. 2d Am. Compl. ¶ 28. The second amended complaint also indicates that the harassing incidents completely ceased after that. As the court has previously stated, "the 'prompt remedial action' standard requires that the employer take action 'reasonably calculated' to end the harassment, not that it take the plaintiff's preferred action or a form of action that the plaintiff personally believes is appropriate." *Zuniga*, 2024 WL 251948, at *6 (quoting *Hockman*, 407 F.3d at 329). Because Sgt. Beaty's action appears to have been reasonably calculated to end the harassment—and apparently actually did end the harassment—the fact that Lt. Bishopp did not also respond to Zuniga's November 15, 2022 email does not enable the court to draw the reasonable inference that the City failed to take prompt remedial action. *See Williams-*

*Boldware*, 741 F.3d at 640 ("[W]here the offending conduct is infrequent or isolated, a reprimand may qualify as a prompt remedial measure.").  Furthermore, assuming that Sgt. Beaty's action in itself is insufficient to constitute prompt remedial action, DPD also interviewed Alli about the offensive touching incident and issued him a criminal citation for it.  Zuniga emphasizes that the DPD internal investigation she filed in November 2022 was allegedly not resolved by her last day of employment in August 2023.  But the fact that DPD had already taken actions that apparently halted Alli's harassment means that this lack of resolution of the formal investigation does not necessarily amount to a failure to take prompt remedial action.

### D

Because Zuniga has pleaded insufficient facts to satisfy two of the claim's essential elements, she has not stated a plausible hostile work environment claim.  The City is therefore entitled to dismissal of this claim.

### IV

The court turns next to Zuniga's Count 3 sex discrimination claim and Count 4 retaliation claim, both of which are based on a theory of constructive discharge.

### A

To establish a Title VII sex discrimination claim based on circumstantial evidence, the plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably.  *Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279,

281 (5th Cir. 2011); *see also McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802 (1973).[4]

And to establish a Title VII retaliation claim, the plaintiff must show "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks and citation omitted). The adverse employment action need not be an "ultimate employment decision," like hiring, granting leave, discharging, promoting, or compensating; it can also be an action that discriminates as to the employee's compensation or as to the "terms, conditions, or privileges of employment," like changing the employee's work schedule or denying weekends off. *Hamilton v. Dallas County*, 79 F.4th 494, 502-06 (5th Cir. 2023) (en

---

[4]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although Chhim did not have to submit evidence to establish a *prima facie* case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive the City's motion to dismiss, Zuniga must plausibly plead the ultimate elements of her Title VII claim. *See Chhim*, 836 F.3d at 370. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

banc); *see* 42 U.S.C. § 2000e-2(a)(1).

To establish these claims based on a theory of constructive discharge, a plaintiff "must prove that working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." *Katz v. Wormuth*, 2023 WL 7001391, at *8 (5th Cir. Oct. 24, 2023) (quoting *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 439-40 (5th Cir. 2005) (internal quotation marks and citation omitted)); *see McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam) (citation omitted) ("A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."). To determine whether such conditions existed, the court considers whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001); *Katz*, 2023 WL 7001391, at *8. "This inquiry is an objective, 'reasonable employee,' test under which [the court] ask[s] 'whether a reasonable person in the plaintiff's shoes would have felt compelled to resign.'" *McCoy*, 492 F.3d at 557 (quoting *Haley v. All. Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004)).

B

As grounds for these constructive discharge-based claims, Zuniga alleges that,

- 13 -

between January and August 2023, she "grew to understand that DPD management was ostracizing her" because she "was not getting any significant amount of new work assignments"—to the point that she reached out to other police officers to ask them whether she could perform work for them.  2d Am. Compl. ¶ 66.  She also alleges that Alli's conduct and the City's failure to handle that conduct caused her to feel anxious and humiliated around colleagues who had witnessed Alli's conduct toward her, lose focus, begin dressing in clothing designed to hide her body, avoid eye contact with Alli, and seek out a licensed professional counselor for a session at work.

The City responds that Zuniga's constructive discharge-based claims should be dismissed because Zuniga "has failed to plausibly allege that her working conditions [are] so intolerable that a reasonable person would feel compelled to resign." D. Br. (ECF No. 29) at 2.  In particular, the City contends that, from January 2023 until Zuniga's last day of employment in August 2023, she was not subjected to any incidents of discrimination, harassment, or retaliation.  To the contrary, the City asserts, Zuniga requested assignment to a different supervisor, Lieutenant Jonathan Blanchard ("Lt. Blanchard") on January 11, 2023, and the second amended complaint identifies Lt. Blanchard as "her new supervisor" by January 12, 2023.  The City therefore maintains that Zuniga's allegation that Sgt. Beaty did not speak to her up until her last day of employment does not constitute retaliation, because Sgt. Beaty was not her supervisor during the last seven months of her employment.

The court holds that Zuniga has failed to allege facts that would enable the court to draw the reasonable inference that she was constructively discharged.  The Fifth Circuit has

- 14 -

dismissed claims alleging constructive discharge when there is a "lack of a temporal connection" between the conduct of which a plaintiff complains and her resignation, and particularly when the plaintiff was reassigned away from the individuals of which she complains long before her resignation. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407 (5th Cir. 2021) (addressing a constructive discharge claim in the 42 U.S.C. § 1981 context, and concluding that the fact that the plaintiff "was not even working in the vicinity of his alleged harasser for nearly the last seven months he was employed" "undermines his contention that he was constructively discharged"); *see Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 755-56 (5th Cir. 1986) (concluding that a five-month gap between the last alleged act of harassment and plaintiff's resignation did not support a finding of constructive discharge).  According to the second amended complaint, Zuniga appears to have been reassigned away from Sgt. Beaty, who she alleges was retaliating against her, for approximately seven months before her resignation.  She also appears to have suffered no additional harassment by Alli after November 2022 and no additional incidents of alleged retaliation from Sgt. Beaty after December 2022.  And as noted above, the fact that Sgt. Beaty was no longer her supervisor beginning in early January 2023 means that his alleged refusal to speak to her in the last months of her employment is not as adverse an action as it could have been had he been supervising her.

The Fifth Circuit has also affirmed dismissal of constructive discharge claims when a plaintiff suffered far worse treatment than Zuniga.  *See, e.g.*, *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming dismissal of constructive discharge claim where

- 15 -

the plaintiff showed he was demoted and had fewer job responsibilities); *Stephens v. C.I.T. Grp./Equip. Fin., Inc.*, 955 F.2d 1023, 1027-28 (5th Cir. 1992) (affirming jury verdict on constructive discharge claim where plaintiff was demoted, faced a reduction in salary and responsibilities, and was repeatedly asked when he planned to quit). Zuniga alleges that she was instructed to redo two work assignments, removed from one project, assigned one task for which she was not trained, and instructed to write a memo explaining her Leave Without Pay request. She also asserts that she received a suspicious Facebook link from Sgt. Beaty. But she was not demoted, did not have her salary reduced, was not reassigned to degrading work, and was not offered pretextual early retirement. Although she alleges that she felt humiliated in front of colleagues when Alli harassed her, there is no indication that such humiliation was specifically calculated to encourage her to resign.

Zuniga has failed to plead a plausible claim that her working conditions were so intolerable that a reasonable person in her shoes would have felt compelled to resign. Because Zuniga has therefore failed to plausibly plead the essential constructive discharge element of her Count 3 and Count 4 claims, the City is entitled to dismissal of these claims.[5]

---

[5]The City does not move to dismiss Zuniga's Count 2 retaliation claim, which implicates all of the same facts but which is not based on a theory of constructive discharge. In dismissing Zuniga's Count 4 constructive-discharge retaliation claim, the court expresses no opinion about the viability of Zuniga's Count 2 retaliation claim.

V

Although the court is granting the City's motion to dismiss Zuniga's Count 1, Count 3, and Count 4 claims, it will allow Zuniga to replead.

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration omitted) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not clear that the defects in Zuniga's hostile work environment claim are incurable, and Zuniga has requested leave to amend.

\*   \*   \*

For the reasons explained, the court grants the City's motion for partial dismissal as to Zuniga's Count 1, Count 3, and Count 4 claims and also grants Zuniga leave to file a third amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

May 28, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 17 -