IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KARLA SOLIS ZUNIGA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-2308-D |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Karla Solis Zuniga ("Zuniga") sues her former employer, the City of Dallas, Texas (the "City"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, asserting, in pertinent part, a retaliation claim based on constructive discharge. The City moves under Fed. R. Civ. P. 12(b)(6) for partial dismissal, seeking to dismiss this retaliation claim. For the reasons that follow, the court grants the motion and dismisses Zuniga's constructive discharge-based retaliation claim with prejudice.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order[1] and need not be repeated at length for purposes of deciding the City's motion to dismiss.

After the court granted the City's first motion for partial dismissal and dismissed

---

[1]*Zuniga v. City of Dallas*, 2024 WL 251948, at *1-4 (N.D. Tex. Jan. 23, 2024) (Fitzwater, J.).

Zuniga's complaint with leave to replead, Zuniga filed a first amended complaint. After the Equal Employment Opportunity Commission issued an additional right-to-sue letter to Zuniga in response to a second, related Charge of Discrimination that she filed, the court granted Zuniga's motion for leave to amend her first amended complaint. Zuniga filed her second amended complaint, adding two new claims stemming from her second Charge of Discrimination. The court granted the City's second motion for partial dismissal and dismissed Zuniga's second amended complaint with leave to replead. Zuniga filed a third amended complaint, narrowing her claims to two theories of retaliation. The third amended complaint is Zuniga's operative pleading.

Zuniga's third amended complaint includes only a few factual allegations that are not included in her original, first amended, or second amended complaints.[2] Zuniga's new allegations concern the job duties of Sergeant Dwight J. Beaty ("Sgt. Beaty") in relation to Zuniga from July 19, 2021, when Sgt. Beaty became Zuniga's immediate supervisor, to August 8, 2023, Zuniga's last day of employment.

First, Zuniga alleges that, when Sgt. Beaty was her immediate supervisor, from July 19, 2021 to on or about January 12, 2023, his job duties included "assigning," "shifting," and "removing" the "job tasks of employees under him" and assigning those employees'

---

[2]The court recounts the background facts favorably to Zuniga as the nonmovant. In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

workspaces.  3d Am. Compl. ¶ 16(A)-(D).  Zuniga also asserts that, when Sgt. Beaty was her immediate supervisor, she was among those employed under him.

Second, Zuniga alleges that, after the Dallas Police Department ("DPD") assigned Lieutenant Jonathan Blanchard ("Lt. Blanchard") as her new supervisor, from January 12, 2023 until her last day of employment on August 8, 2023, Sgt. Beaty "continued to play a significant role as 'gatekeeper' in connection with the terms, conditions, and privileges of Zuniga's employment at DPD," *id.* ¶ 66; and that Sgt. Beaty remained responsible for assigning, shifting, and removing job tasks to or from Zuniga and for assigning her workspace.  As an example, Zuniga alleges that Sgt. Beaty moved Zuniga into the office of a male coworker, Charles Flaig ("Flaig"), and required that Flaig relocate to an office cubicle next to Sgt. Beaty's office, informing Flaig "that he had a policy where he does not allow coworkers of different genders to share an office."  *Id.* ¶ 65(D)(i) (bold font and underlining omitted).

Zuniga brings two Title VII claims against the City in her third amended complaint: retaliation ("Count 1") and retaliation based on a constructive discharge theory ("Count 2"). The City now moves for partial dismissal, seeking to dismiss Count 2 under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The court is deciding the motion on the briefs, without oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the

light most favorable to the plaintiff.' " *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III

The claim at issue is Zuniga's Count 2 retaliation claim based on a theory of constructive discharge.

### A

To plead a plausible Title VII retaliation claim, the plaintiff must allege sufficient

facts for the court to draw the reasonable inference: "(1) that the plaintiff engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted).  The adverse employment action need not be an "ultimate employment decision," like hiring, granting leave, discharging, promoting, or compensating; it can also be an action that discriminates as to the employee's compensation or as to the "terms, conditions, or privileges of employment," like changing the employee's work schedule or denying weekends off. *Hamilton v. Dallas County*, 79 F.4th 494, 502-06 (5th Cir. 2023) (en banc); *see* 42 U.S.C. § 2000e-2(a)(1).

To establish these claims based on a theory of constructive discharge, a plaintiff "must prove that working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign."  *Katz v. Wormuth*, 2023 WL 7001391, at *8 (5th Cir. Oct. 24, 2023) (internal quotation marks omitted) (quoting *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 439-40 (5th Cir. 2005)); *see McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam) ("A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." (internal quotation marks and footnote omitted)), *abrogated on other grounds by Hamilton*, 79 F.4th 494.  To determine whether such conditions existed, the court considers whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job
> responsibilities; (4) reassignment to menial or degrading work;
> (5) badgering, harassment, or humiliation by the employer
> calculated to encourage the employee's resignation; or (6) offers
> of early retirement that would make the employee worse off
> whether the offer was accepted or not.

*Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016); *see also Katz*, 2023 WL 7001391, at *8. "This inquiry is an objective, 'reasonable employee,' test under which [the court] ask[s] 'whether a reasonable person in the plaintiff's shoes would have felt compelled to resign.' " *McCoy*, 492 F.3d at 557 (quoting *Haley v. All. Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004)). At the Rule 12(b)(6) stage, the plaintiff must satisfy a pleading, not a proof, requirement. She must plead the required elements with sufficient factual content that the court can draw the reasonable inference that the defendant is liable for the misconduct alleged.

B

As grounds for her constructive discharge-based retaliation claim, Zuniga alleges the following: the City reduced her job responsibilities, and badgered, harassed, and humiliated her to encourage her to quit; from January 12, 2023 to August 8, 2023, "thanks to Sgt. Beaty's power to decide the job tasks Zuniga will and will not do . . . Zuniga's job responsibilities were reduced to such a degree that Zuniga began reaching out to other police officers to ask them if there was any work she could do for them," 3d Am. Compl. ¶ 73; the City badgered, harassed, or humiliated her by declining to address coworker Oladapo Alli's

- 6 -

("Alli") misconduct toward her, cutting her off from contact with her supervisor, and cutting her off from her coworkers; Sgt. Beaty did nothing in response to Alli's threat to retaliate against Zuniga for her complaints against him by falsely accusing her of calling him a racial epithet; management's failures to address Alli's broader misconduct toward her "impaired how Zuniga felt, acted and looked in the workplace," *id.* ¶ 33; she "began feeling anxious," "sensed she was losing focus," "felt embarrassed/humiliated around coworkers who had witnessed how Alli was treating her," and "began dressing herself in clothes that were more designed to hide herself," *id.* ¶ 33(A)-(D); after November 30, 2022, Sgt. Beaty "chose, intentionally, never to utter a word to Zuniga for the balance of her employment," *id.* ¶ 89(B)(ii); and Sgt. Beaty prevented Zuniga's male coworker, Flaig, from sharing a workspace with her.

The City responds that Zuniga's constructive discharge-based retaliation claim should be dismissed because Zuniga "does not plausibly allege that her working conditions were so intolerable that a reasonable person would feel compelled to resign." D. Br. 1-2. In particular, the City contends that, although it disputes Zuniga's allegations, even if the allegations are accepted as true and viewed in the light most favorable to her, the "alleged conduct simply does not rise to the level required for a constructive discharge claim in the Fifth Circuit." *Id.* at 11.

C

Zuniga has failed to allege facts that enable the court to draw the reasonable inference that she was constructively discharged.[3]   The Fifth Circuit has affirmed dismissal of constructive discharge claims where a plaintiff alleged that she suffered far worse treatment than that of which Zuniga complains.  *See, e.g.*, *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming summary judgment dismissing constructive discharge-based claim where plaintiff showed he was demoted and had fewer job responsibilities).  The Fifth Circuit has concluded that treatment comparable to that of which Zuniga complains did not constitute a constructive discharge.  *See, e.g.*, *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 292-93 (5th Cir. 2019) (affirming dismissal of constructive discharge-based claim where plaintiff alleged her employer ordered her coworkers to stop communicating with her and revealed her whistleblower status to them); *Bozé v. Branstetter*, 912 F.2d 801, 805-06 (5th Cir. 1990) (per curiam) (affirming summary judgment dismissing constructive discharge-based claim where plaintiff suffered a poor performance evaluation and loss of responsibilities similar to a demotion).  And when the Fifth Circuit has upheld constructive discharge-based claims, the plaintiff has frequently alleged considerably worse treatment

---

[3]The court will assume *arguendo* that Zuniga's third amended complaint alleges facts that enable the court to draw the reasonable inference that there is a sufficient temporal connection between the conduct of which Zuniga complains and her resignation.  But the court need not reach this issue because it concludes that Zuniga's allegations of adverse treatment do not plead a plausible constructive discharged-based retaliation claim.  Accordingly, the court expresses no view on the merits of Zuniga's "gatekeeper" theory of constructive discharge.

than what Zuniga alleges. *See, e.g.*, *LeBeouf v. Manning*, 575 Fed. Appx. 374, 377-78 (5th Cir. 2014) (per curiam) (reversing dismissal of constructive discharge-based claim where plaintiff alleged her employer, without justification, informed her that she must submit to 30 days without pay, a drug screening, and a three-day inpatient psychiatric hospitalization, or else resign or be terminated); *Stephens v. C.I.T. Grp./Equip. Fin., Inc.*, 955 F.2d 1023, 1027-28 (5th Cir. 1992) (affirming jury verdict on constructive discharge-based claim where plaintiff was demoted, faced a reduction in salary and responsibilities, and was repeatedly asked when he planned to quit); *Griffin v. Delchamps, Inc.*, 1999 WL 155682, at *10-11 (5th Cir. 1999) (affirming jury verdict on constructive discharge-based claim where plaintiffs suffered severe and degrading sexual harassment that continued unabated for months while supervisors ignored their complaints).

Zuniga alleges that she was instructed to redo two work assignments, removed from one project, assigned one task for which she was not trained, and instructed to write a memo explaining her Leave Without Pay request. She also asserts that she received a suspicious Facebook link from Sgt. Beaty, did not interact in person with Sgt. Beaty from the time of her complaint until her resignation, had her job responsibilities reduced, and was prevented by Sgt. Beaty from sharing a workspace with a certain coworker.[4] But she was not demoted,

---

[4]Zuniga's "gatekeeper" theory of constructive discharge, the validity of which the court assumes *arguendo*, raises the question of which alleged incidents may support Zuniga's constructive discharge-based claim—both those occurring when Sgt. Beaty was Zuniga's immediate supervisor and those occurring when Sgt. Beaty acted in his "gatekeeper" capacity, or only the latter. A claim alleging constructive discharge requires a temporal connection between the conduct of which a plaintiff complains and her resignation. *Johnson*

- 9 -

did not have her salary reduced, was not reassigned to degrading work, and was not offered pretextual early retirement. It can reasonably be inferred from her third amended complaint that her complaints were not ignored,[5] her coworker's harassment did not continue unabated, and she was not approached about resignation or termination. "[T]here is no authority, nor does [Zuniga] cite any, that suggests that these allegations are of harassment so extreme that a reasonable employee would have felt compelled to resign." *Plustache v. Harrison*, 2023 WL 3197043, at *2 (5th Cir. May 2, 2023) (affirming dismissal of Title VII constructive

_____

*v. PRIDE Indus., Inc.*, 7 F.4th 392, 407 (5th Cir. 2021) (addressing a constructive discharge claim in the 42 U.S.C. § 1981 context, and concluding that the fact that the plaintiff "was not even working in the vicinity of his alleged harasser for nearly the last seven months he was employed . . . . undermines his contention that he was constructively discharged"); *see Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 755-56 (5th Cir. 1986) (concluding that a five-month gap between the last alleged act of harassment and plaintiff's resignation did not support a finding of constructive discharge). The Fifth Circuit has dismissed claims alleging constructive discharge when the plaintiff was reassigned away from the individuals of which she complains long before her resignation. *See Johnson*, 7 F.4th at 407. The court assumes *arguendo* that Zuniga alleges the requisite temporal connection by alleging that Sgt. Beaty acted in a "gatekeeper" capacity with respect to her employment during the time period for which Lt. Blanchard was her immediate supervisor. But it is unclear whether under this "gatekeeper" theory the constructive discharge inquiry is properly limited to only the alleged incidents of adverse treatment that have the requisite temporal connection with Zuniga's resignation—i.e., those occurring when Sgt. Beaty acted in his "gatekeeper" capacity. But the court need not reach this issue because it concludes that even when considered altogether, Zuniga's allegations do not plead a plausible constructive discharge-based retaliation claim. Accordingly, the court will consider all incidents of adverse treatment Zuniga's third amended complaint alleges.

[5]Although Zuniga alleges that Sgt. Beaty did nothing in response to Alli's threat to retaliate against Zuniga's complaints against him by falsely accusing her of calling him a racial epithet, she concedes that the City addressed at least some of her complaints. For example, Zuniga alleges that DPD responded to her grievance against Sgt. Beaty by temporarily reassigning Lt. Blanchard as her direct supervisor; and that DPD responded to her complaint against her coworker, Alli, by issuing him a formal citation.

- 10 -

discharge claim for failure to state a claim).

"In the constructive discharge inquiry, the court examines the working environment as a whole[.]" *Robinson v. Waste Mgmt. of Texas*, 122 Fed. Appx. 756, 758 (5th Cir. 2004) (per curiam).  The relevant factors "are considered singly or in combination, i.e., a single, greatly significant event may be sufficient to create an intolerable situation, as can several, less egregious events working in tandem." *Jackson v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 2002 WL 31687699, at *4 (5th Cir. Oct. 23, 2002) (per curiam) (citing *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).  But "[t]he Fifth Circuit has set the bar very high for plaintiffs seeking to establish a constructive discharge." *Id.* (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).  And whether considered singly or in combination, the events Zuniga alleges, accepted as true and viewed in the light most favorable to her, are not sufficiently adverse to plausibly plead constructive discharge. *See, e.g.*, *Bunge*, 207 F.3d at 782-83 (affirming summary judgment dismissing constructive discharge claim where plaintiff "clearly proved" combination of demotion and reduction in job responsibilities but "four of the constructive discharge factors were not present").

Zuniga has failed to plead a plausible claim that her working conditions were so intolerable that a reasonable person in her shoes would have felt compelled to resign. Because Zuniga has failed to plausibly plead the essential constructive discharge element of her Count 2 claim, the City is entitled to dismissal of this claim.[6]

_____

[6]The City does not move to dismiss Zuniga's Count 1 retaliation claim, which implicates all of the same facts but which is not based on a theory of constructive discharge.

IV

Having granted the City's motion to dismiss, the court turns to the question whether to permit Zuniga to replead.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (internal quotation marks and citation omitted). Here, the court has given Zuniga more than one opportunity to amend her pleadings. Accordingly, in the court's discretion it denies Zuniga's request for leave to amend her third amended complaint.

\*   \*   \*

For the reasons explained, the court grants the City's motion for partial dismissal as to Zuniga's Count 2 claim and dismisses Zuniga's Count 2 claim with prejudice. The City may answer or otherwise respond to Zuniga's third amended complaint no later than 14 days after the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 6, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

_____

In dismissing Zuniga's Count 2 constructive-discharge retaliation claim, the court expresses no view regarding the viability of Zuniga's Count 1 retaliation claim.